# IN THE UNTIED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIFFANY L. MCKNIGHT, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TIERRA MEDIA, INC., ) <br> ) <br> Defendant. ) | Case No. CIV-21-1035-JD <br> **JURY TRIAL DEMANDED** |

## COMPLAINT

This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000, *et seq*. to correct unlawful employment practices on the basis of her race and/or sex, African American/Black and female, and to provide appropriate relief to Plaintiff Tiffany L. McKnight ("Plaintiff") who was adversely affected by Defendant Tierra Media, Inc. ("Defendant")'s unlawful practices.

## JURISDICTION & VENUE

1. Jurisdiction is proper before this Court pursuant to 28 U.S.C. § 1331, as this action is authorized by and instituted pursuant to the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e.

2. Venue in this district is proper for the Defendant pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant operated its business with the United States District Court for the Western District of Oklahoma at all relevant times.

3. The unlawful employment practices alleged herein were committed within the jurisdiction of the United States District Court for the Western District of Oklahoma.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## PARTIES

5. Plaintiff Tiffany McKnight is an African American/Black female.

6. Plaintiff was a resident of Oklahoma County, State of Oklahoma at all relevant times.

7. Defendant Tierra Media, Inc. was an "employer" engaged in an industry affecting commerce within the context of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g), and (h) at all relevant times.

8. Defendant has continuously been and is currently doing business in the State of Oklahoma.

9. Defendant was continuously employed at least fifteen (15) employees at all relevant times.

## GENERAL ALLEGATIONS

10. More than thirty days prior to the institution of this lawsuit, Plaintiff, a former employee of Defendant, filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII by Defendant.

11. On or about April 10, 2020, Plaintiff filed EEOC Charge No. 564-2020-01183 against Defendant alleging discrimination based on her sex and race and retaliation. *Ex. 1, EEOC Charge of Discrimination*.

12.     Plaintiff is entitled to a right-to-sue letter because at least 180 days have passed since Plaintiff filed her Charge of Discrimination and the EEOC and Attorney General have not brought suit against or entered a conciliation agreement with Defendant. 42 U.S.C. § 2000e-5(f)(1).

13.     On or about October 5, 2021, EEOC Federal Investigator Christina Crews advised Plaintiff, EEOC staff had been "instructed not to process any cases" and stated the EEOC would "send an assignment letter once [her] charge has been reassigned." *Ex. 2, October 5, 2021 Christina Crews email*. Thus, Plaintiff is unable to request a Right to Sue letter or any action on her Charge of Discrimination.

14.     Plaintiff has contemporaneously filed a Motion to Stay requesting the Court impose a ninety (90) day stay on these proceedings until the EEOC completes its investigation and issues a Right to Sue letter.

15.     All conditions precedent to the institution of this lawsuit have been fulfilled with the exception of Plaintiff being provided a Right to Sue letter from the EEOC.

## FACTUAL ALLEGATIONS

16.     Defendant is an Oklahoma based periodical publisher and owns multiple publications including Oklahoma Gazette, an alt-weekly newspaper, and Extract Magazine, a monthly magazine.

17.     Defendant hired Plaintiff as a Graphic Designer in August 2018 to work exclusively on the Oklahoma Gazette publication.

18.     Plaintiff was the only African American female employed by Defendant at all relevant times. Defendant's employees would often remark how Defendant never employed another similarly situated African American/Black female before Plaintiff.

19. Plaintiff was assigned to the creative department which included the Creative Director and two Graphic Designers, Ingvard Ashby ("Ashby"), a white male, and Plaintiff.

20. Plaintiff's direct supervisor, Defendant's Creative Director, resigned in 2019.

21. Defendant hired Phillip Danner ("Danner") as the replacement Creative Director in August 2019. Danner directly supervised Plaintiff.

22. Danner began to publicly criticize Plaintiff and belittle her work in front of the creative department. Danner never criticized or belittled any other employees' work.

23. Danner then began to demand Plaintiff sit next to him at his computer while he edited photos under the guide of teaching Plaintiff to use Photoshop. Plaintiff did not use Photoshop to complete her assignments. During the Photoshop "lessons," Danner would spend hours editing subjects' bodies to remove what he described as "flaws." During one "lesson," Danner focused intently on editing a model's afro hairstyle. Danner told Plaintiff several times how much he "loved her hair," which was also styled in an afro. No other employees were required to participate in Danner's "lessons."

24. On or about October 14, 2019, Danner demanded Plaintiff create new layout designs for Extract Magazine in addition to her Oklahoma Gazette assignments. Plaintiff advised Extract Magazine layouts were assigned to Ashby and layouts for both publications were generally performed by multiple designers over the course of weeks. Danner demanded Plaintiff complete both her outstanding Oklahoma Gazette layouts and Ashby's layouts before the upcoming press deadline on October 21, 2019. Plaintiff was only provided four days to complete both projects. No one else was required to complete projects for both publications on such short notice.

25. On or about October 17, 2019, Plaintiff felt ill and advised Accounting/Human Resources Manager, Marian Harrison, she would be taking a half day for sick leave.

4

26. Danner refused to grant Plaintiff remote access to the company software. Danner granted Ashby remote access and granted the former Creative Director continued access after her resignation.

27. On or about Friday, October 18, 2019, Plaintiff returned to work to complete the Extract Magazine layouts although she was still ill. When Plaintiff presented the completed layouts to Danner, he stated he already selected final layouts despite ordering Plaintiff to complete new layouts. Danner only assigned Plaintiff the Extract Magazine layouts to bloat her workload and cause her to fail to meet the press deadline as a pretext for her unlawful termination.

28. On or about October 21, 2019, Plaintiff contacted Danner via telephone to advise she was unable to come into the office because her condition worsened over the weekend. Danner became hostile, refused to allow Plaintiff to use sick leave, and demanded she report to the office because it was "press day" even though he had already selected the final layouts.

29. Plaintiff then traveled to her office for fear of losing her job. Once Plaintiff arrived, Danner was smoking a cigarette in the parking lot. He initially ignored Plaintiff. Danner then followed Plaintiff into the building and mockingly asked if she was "still sick." Plaintiff advised she was ill. Danner became physically hostile towards Plaintiff and threw his pen and papers across the table. Danner then yelled for Plaintiff to "leave." Plaintiff, frightened, asked what she did to upset Danner. Danner continued to yell and demanded Plaintiff leave immediately. Plaintiff fled not wanting to be alone with Danner. Plaintiff, shaken from her interaction, cried in her car as she sent an email to Danner's supervisor and Defendant's publisher and Chief Executive Officer, Pete Brzycki, to advise of the interaction. Brzycki never responded.

30. On or about October 22, 2019, Plaintiff returned to work. Danner again mockingly inquired if she was "still sick." Plaintiff stated she was ill. Danner ordered Plaintiff to leave.

5

Plaintiff complied and went to Brzycki's office to report her increasingly hostile interactions with Danner. Plaintiff also inquired regarding her email reporting the prior interaction. Brzycki did not acknowledge the email or the interactions.

31. Upon suspicion and belief, Brzycki never took any action to intervene or prevent Danner's discriminatory conduct despite Plaintiff's reports.

32. On or about October 23, 2019, Plaintiff returned to work. When she arrived, Danner refused to acknowledge her presence.

33. On the afternoon of October 23, 2019, Danner supervised a weekly creative department meeting to discuss themes for future publications. During the meeting, Ashby dismissively referred to the northeast portion of Oklahoma City, a historically African American/Black community, as "the ghetto." Plaintiff advised the comments made her uncomfortable as an African American/Black woman. There was no response. Danner, Ashby, and the remaining meeting attendees refused to acknowledge Plaintiff for the remainder of the meeting.

34. On or about October 24, 2019, Danner and Ashby refused to acknowledge Plaintiff.

35. On the afternoon of October 24, 2019, Plaintiff was having a discussion with editorial department representatives who began discussing Ku Klux Klan flag burning and the use of martial law against African Americans. The discussion made Plaintiff uncomfortable. Defendant's editorial staff would frequently inquire with Plaintiff about historically African American areas of Oklahoma City, Oklahoma. Plaintiff was not a member of the editorial staff and explained multiple times the inquiries made her uncomfortable.

36. On or about October 25, 2019, Danner and Ashby continued to refuse to acknowledge Plaintiff.

37. At approximately 12:45 p.m. on October 25, 2019, Danner called Plaintiff into a meeting with Harrison. Danner advised Plaintiff was terminated. Harrison and Danner refused to state the reason for Plaintiff's termination. Danner instead produced a termination letter which stated Plaintiff was terminated for the "[f]ailure to timely execute assignments and new layout styles."

38. At an office potluck, Brzycki was having a discussion with employees regarding spanking children. Plaintiff was not a party to the conversation. Nonetheless, an employee yelled that Plaintiff, the only African American/Black employee, must know what Brzycki meant because "Black people spank their kids." Several other employees laughed or nodded in approval. Plaintiff was mortified and left soon thereafter. Several employees followed Plaintiff to her car continuing to discuss "Black people." Plaintiff continued to attempt to end the interaction and drove away.

39. Defendant took no action to either investigate or to counsel Danner about any alleged wrongdoing.

40. On information and belief, Defendant hired a white female to replace Plaintiff.

41. On information and belief, no other similarly situated employees, other than Plaintiff, have been discharged for the same or similar alleged policy violations.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**Intentional Discrimination**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e,** *et seq.*

42. Plaintiff incorporates preceding paragraphs as though fully alleged herein.

43. Plaintiff was a member of a protected class, to wit – an African American/Black female.

44. Plaintiff suffered an adverse employment action in the form of a hostile work environment, discrimination on the basis of her race and sex/gender, and wrongful termination.

45. Plaintiff was qualified for her position as a Graphic Designer and had worked in the capacity as a Graphic Designer with no incident until Danner became her supervisor.

46. Plaintiff was treated less favorable than others not in her protected classes, African American/Black and female.

47. Defendants engaged in intentional gender discrimination in the terms and conditions of the Plaintiff's employment, including, but not limited to, the Plaintiff's termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

48. Defendants' discriminatory conduct, in violation of Title VII, directly caused Plaintiff to suffer emotional distress, loss of earning, fringe benefits, and reputational damage.

49. Defendants' actions directly caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

50. Defendants engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

## SECOND CLAIM FOR RELIEF

### Retaliation
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*.

51. Plaintiff incorporates preceding paragraphs as though fully alleged herein.

52. Plaintiff engaged in protected activities, including making internal complaints of Defendant's discriminatory policies and practices and her hostile work environment.

53. Defendant engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by maintaining a hostile work environment and wrongfully

terminating Plaintiff's employment because she opposed Defendant's discriminatory policies and practices.

54. The effect of Defendant's discriminatory policies and practices deprived Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her race, African American/Black, and her sex, female.

55. Defendant's unlawful employment practices and discriminatory policies and practices were intentional and done with malice or reckless indifference to Plaintiff's federally protected rights.

56. Defendants' discriminatory conduct, in violation of Title VII, directly caused Plaintiff to suffer emotional distress, loss of earning, fringe benefits, and reputational damage.

57. Defendants' actions directly caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages pursuant to 42 U.S.C. § 1981a.

58. Defendants engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, entitling her to punitive damages pursuant to 42 U.S.C. § 1981a.

## THIRD CLAIM FOR RELIEF

**Wrongful Termination of Employment in Violation of Oklahoma Public Policy**

59. Plaintiff incorporates preceding paragraphs as though fully alleged herein.

60. Plaintiff was unlawfully discharged from her employment as a Graphic Designer with Defendant on the basis of her basis of her race and sex/gender.

61. Plaintiff is an African American/Black female and is therefore a member of multiple protected classes.

62. Plaintiff's status as a member of protected classes was a significant factor in Defendant's discharge of Plaintiff.

63. Defendant's discharge of Plaintiff was unlawful employment discrimination against her because of her status as a member of protected classes.

64. Plaintiff was damaged as a result of the discharge.

65. Plaintiff's discharge was against the public policy of Oklahoma.

66. As a result of the unlawful discharge, Plaintiff has and will continue to suffer lost earnings and employment benefits, damages for mental and emotional distress, and reputational damage.

## **FOURTH CLAIM FOR RELIEF**

### **Intentional Infliction of Emotional Distress**

67. Plaintiff incorporates preceding paragraphs as though fully alleged herein.

68. Defendant's actions in subjecting Plaintiff to a hostile work environment, failing to act to protect Plaintiff from a hostile work environment, discriminating against Plaintiff on the basis of her race and gender, and wrongfully terminating Plaintiff were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society.

69. Defendant intentionally or recklessly caused severe emotional distress to Plaintiff beyond that which a reasonable person could be expected to endure in violation of Oklahoma law.

70. Defendant recklessly caused emotional distress to Plaintiff because it knew there was a substantial probability Plaintiff would suffer emotional distress as a result from Defendant intentionally or recklessly hostile work environment, failing to act to protect Plaintiff from a hostile

work environment, discriminating against Plaintiff on the basis of her race and gender, and wrongfully terminating Plaintiff, and Defendant deliberately disregarded this probability.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment as follows:

1. The Court order Defendants to reinstate Plaintiff's employment;

2. The Court grant full front pay to the Plaintiff;

3. The Court grant full back pay to the Plaintiff;

4. The Court grant Plaintiff compensatory damages for the humiliation, emotional distress, reputational damage, and other damages caused by Defendants' conduct in excess of Seventy-Five Thousand Dollars ($75,000.00);

5. The Court grant Plaintiff punitive damages for Defendants' malicious and recklessly indifferent conduct;

6. The Court grant Plaintiff all employment benefits she would have enjoyed had she not been discriminated and retaliated against;

7. The Court grant Plaintiff expenses of litigation, including reasonable attorneys' fees, pursuant to the Title VII, and/or 42 U.S.C. § 1988;

8. The Court grant Plaintiff a jury trial;

9. The Court grant Plaintiff all other relief the Court deems just and proper; and,

10. The Court grant temporary, preliminary, and permanent injunctive relief prohibiting Defendants from engaging in further discriminatory conduct.

Respectfully submitted,

_____s/Myriah S. Downs_____
Justin D. Meek, OBA #21294
Myriah S. Downs, OBA #32381
Benjamin R. Grubb, OBA #31569
DEWITT, PARUOLO & MEEK, P.L.L.C.
P.O. Box 138800
Oklahoma City, OK 73113
Phone: 405-705-3600
Fax: 405-705-2573
jmeek@46legal.com
mdowns@46legal.com
bgrubb@46legal.com
***Counsel for Plaintiff Tiffany L. McKnight***

**ATTORNEY LIEN CLAIMED**